J-S46032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.J.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.T. A/K/A D.W.T. | : | |
| A/K/A D.W.T. A/K/A D.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1004 EDA 2019 |

Appeal from the Decree Entered February 26, 2019
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2018-9036

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 21, 2019**

Appellant, D.T. ("Father"), appeals from the decree entered February 26, 2019, involuntarily terminating his parental rights to his child, M.J.T. ("Child"), born May 2012.[1]   Additionally, Father's counsel, Julieanne Bateman, Esquire, seeks to withdraw her representation of Father pursuant to **Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** briefing criteria to appeals by indigent

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] That same day, the court terminated the parental rights of Child's biological mother, J.K. ("Mother").  Mother has also appealed, and we address her issues in a separate memorandum at 1002 EDA 2019.  Mother has therefore elected not to participate in the instant appeal.  Letter from Mother's Counsel, Jennifer E. Pierce, Esquire, to Office of the Prothonotary, Superior Court of Pennsylvania (July 15, 2019).

parents represented by court-appointed counsel in involuntary termination matters). After careful review, we affirm and grant counsel's petition to withdraw.

We summarize the facts and procedural history underlying this appeal as follows. *See* Trial Court Opinion, filed 5/24/2019, at 1-7; N.T., 2/21/2019, at 1-232. Prior to the commencement of the instant matter, the Bucks County Children and Youth Social Services Agency ("the Agency") had previously provided general protective services to the family. The first referral to the Agency was made in May 2016, due to lack of supervision and general welfare concerns; it was closed in June 2016. A second referral was made in September 2016 due to inadequate parenting, lack of supervision, and substance abuse concerns. A third referral was made in December 2016 averring that Child's biological mother, J.K. ("Mother"), was living in a shelter with Child and was impaired while caring for him.

In January 2017, the Agency obtained an emergency shelter care order after Mother informed the Agency she was no longer receiving mental health treatment and revealed a long history of substance abuse. At that time, Mother tested positive for heroin, cocaine, and marijuana.

On March 20, 2017, Child was adjudicated dependent. Father was given objectives for reunification which included remaining drug-free, obtaining and completing substance abuse and mental health counseling, and obtaining and maintaining appropriate housing and income, and cooperating with his parole

officer. On February 7, 2018, Child's permanency goal was changed from reunification to adoption. Father did not appeal the goal change.

On April 6, 2018, the Agency filed petitions for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

On February 26, 2019, the court held a hearing on the termination petitions. Child was represented by guardian *ad litem*, Lisa A. Horne, Esquire, and legal interests counsel, Timothy J. Barton, Esquire. Mother, represented by counsel, appeared, and testified on her own behalf. Father, although represented by counsel, was not present and did not testify on his own behalf.[2] The Agency presented the testimony of Jodi Hertzberg, the Agency caseworker. Father did not present any witnesses.

At the time Child was taken into custody, Father was not involved with Child and was incarcerated in the state of Delaware. N.T., 2/21/2019, at 21-22. Regardless, the Agency prepared family service objective goals for him. Father was released from custody in April 2017 but maintained limited contact with the Agency. *Id.* at 22. Caseworkers had to reach out numerous times to engage Father in reviewing the goals of the plan and arrange visitation. *Id.* Father made a few visits between April 2017 and September 2017 but has not

---

[2] Father initially did not respond to counsel's written communication in January 2019, but eventually indicated to counsel via text message that he would not be attending the hearing. N.T., 2/21/2019, at 9.

- 3 -

had contact with Child since that date. *Id.* at 23. Father did not provide his address or contact information to the Agency, only the name and location of the barbershop where he is employed. *Id.* at 22-23.

Father has never provided voluntary child support, food, clothing, or other necessities of life. *Id.* at 24. Father never sent Child cards, gifts, or letters. *Id.* Father never reached out to the Agency about being a father to Child, nor has he had contact with the Agency since the filing of the petition. *Id.* at 25. Father never completed the objectives of his family service plan. *Id.* Ms. Hertzberg testified that it was in Child's best interests for Father's parental rights to be terminated. *Id.* at 55.

Ms. Hertzberg further testified that, since April 2017, Child has been residing in a foster home. *Id.* at 35. Child's foster parent is a single woman whose mother and father live in an in-law suite attached to the home. *Id.* at 41. Child has his own bedroom, which he is very proud of, and a dog he loves. *Id.* at 103-04. "Foster grandparents" are very involved in Child's life and Child adores them, calling them "Mom-mom" and "Pop-pop." *Id.* at 41. Child calls his foster mother "Mommy" and is loving and affectionate towards her. *Id.* at 42. Foster mother is an adoptive resource. *Id.* at 44. At the beginning of his placement, Child was rough, had difficulty with limits and acting out, and had issues with wetting the bed and nightmares. *Id.* at 93. Child was placed in therapy to work on these behaviors. *Id.* at 93-94.

Mother testified at length about the abuse she suffered at Father's hands. *Id.* at 146-71. The abuse was physical, emotional, and sexual and included hitting her, controlling her, breaking her phone, and "imprisoning her" in a motel room. *Id.* Mother also testified regarding Father's drug use. *Id.* at 147. Eventually, she obtained an order against Father pursuant to the Protection from Abuse Act ("PFA"). *Id.* at 161, 188.

Timothy Barton, Esquire, Child's counsel, stated that he had met with Child on two occasions, first in December 2018 and again the week of the termination hearing. *Id.* at 226-27. Child is bright and articulate, although Attorney Barton did not think that Child understood all of the legal ramifications of a termination hearing. *Id.* Child told Attorney Barton he is very happy with foster mother, wants to stay with his foster family, and does understand that, as a result of the hearing, there was a possibility his foster mother could adopt him. *Id.* at 228. Child indicated he wanted to be adopted by foster mother. *Id.* Child did not understand the events that had separated him from Mother. *Id.* at 229.

Following the hearing, the court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). Father's counsel timely filed a notice of appeal and, in lieu of a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), counsel filed an indication of her intent to file an *Anders* brief pursuant to Pa.R.A.P. 1925(c)(4). In this Court, counsel has filed an *Anders* brief.

When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

978 A.2d at 361.

> Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief.

**Commonwealth v. Orellana**, 86 A.3d 877, 879-80 (Pa. Super. 2014) (citation and internal brackets and quotation marks omitted). After determining that counsel has satisfied these technical requirements of **Anders** and **Santiago,** only then may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues

overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Attorney Bateman's *Anders* brief complies with the above requirements. She includes a summary of the relevant factual and procedural history, and she sets forth her conclusion that the appeal is frivolous and no issues could be raised. Additionally, Attorney Bateman has supplied Father with a copy of the *Anders* brief and a letter explaining the rights enumerated in *Orellana*, 86 A.3d at 879-80. Thus, counsel has complied with the technical requirements for withdrawal, and we therefore proceed to our independent review of the record to determine if the issues raised are frivolous and to ascertain whether there are non-frivolous issues Father may pursue on appeal.

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We focus our analysis on subsections (a)(2) and (b).

The relevant subsections of 23 Pa.C.S. § 2511 provide:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

***

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be

- 8 -

without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct but also concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

In the current action, Father was incarcerated for much of Child's life. He was provided with objectives to complete in order to be reunified with Child, but Father never completed those objectives, which included providing child support, food, clothing, necessities of life, cards, gifts, or letters. Father did not remain in contact with the Agency and did not provide contact information so that the Agency could reach him. Father's only contact with Child was a few visits between April and September 2017, but he has not had contact with Child since then.

Accordingly, we discern no error or law nor abuse of discretion in the trial court's finding that clear and convincing evidence supported the termination of Father's parental rights pursuant to Section 2511(a)(2). *See T.S.M.*, 71 A.3d at 267; *L.M.*, 923 A.2d at 511. Father's continued "refus[al] to perform his parental duties[,]" Trial Court Opinion, filed 5/24/2019, at 8 – including his failure to complete a single objective or to remain in contact with Child -- resulted in Child being without essential parental care, and "the conditions and causes" of Father "refusal cannot or will not be remedied by"

him. 23 Pa.C.S. § 2511(a)(2); *see also Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we must consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Id.* (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Additionally, the court may emphasize the safety needs of a child. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that

no bond exists. *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

In the current appeal, the record contains no testimony or other evidence of a bond between Father and Child; on the contrary, the last contact Father had with Child was in September 2017. As the trial court explained:

> Regrettably, [the court] heard no evidence of any relationship at all between Father and Child. . . . [T]ermination was clearly warranted here. The record contains clear and convincing evidence that Father has made essentially no efforts toward any adequate parenting of [Child]. At this time, we know nothing of Father's life circumstances other than representations and descriptions which were provided by Mother. The evidence suggests that Father has no desire to provide for Child. The record is devoid of testimony or evidence of a necessary and beneficial relationship between the two, the existence of which, should Father's rights be terminated, would result in a negative effect on Child.

Trial Court Opinion, filed 5/24/2019, at 10-11.

Furthermore, as noted above, a trial court may consider intangibles, such as the love, comfort, security, and stability a child might have with a foster parent. *N.A.M.*, 33 A.3d at 103. In the current case, Child is thriving in his foster placement, where he had been since April 2017; he has a strong and loving bond with his foster mother and wishes to be adopted by her. *See* Trial Court Opinion, filed 5/24/2019, at 9-10. Child has had a stable home in

his foster placement, and it is in his best interests that he remains there. **See** **L.M.**, 923 A.2d at 511.

Consequently, we discern no error of law or abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination. **See** 23 Pa.C.S. § 2511(b); **T.S.M.**, 71 A.3d at 267; **L.M.**, 923 A.2d at 511.

Accordingly, clear and convincing evidence supports the trial court's termination of Father's parental rights under Section 2511(a)(2) as well as the Section 2511(b) findings that no bond existed between Father and Child, and that adoption would best serve Child's needs and welfare. **See Z.P.**, 994 A.2d at 1126-27; **K.Z.S.**, 946 A.2d at 763.

In sum, we agree with Attorney Bateman that Father's issues are frivolous. We have independently reviewed the record and find no other issues of arguable merit that he could pursue on appeal. Accordingly, we affirm the trial court decree and grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/19